UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY JOHNSON,

           Plaintiff,

v.

JASON MEHAFFEY, JOHN COOPER,
NATE TAMMINGA, REBECCA CASAREZ,
and, DAVE ROYCE,

           Defendants.

_____/

Case No. 1:22-cv-342

Hon. Jane M. Beckering

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Bradley Johnson ("Johnson"), a prisoner in the custody of the Michigan Department of Corrections (MDOC) filed this civil rights lawsuit against employees of the Kent County Sheriff's Department ("Sheriff's Department").   This matter is now before the Court on the remaining defendants' motion for summary judgment (ECF No. 81).

    **I.**     **Background**

Plaintiff filed his complaint on April 12, 2022, and filed his first amended complaint (FAC) on June 7, 2022.   Compl. (ECF No. 1); FAC (ECF No. 13).   The FAC alleged incidents which occurred after a court hearing on July 9, 2021, when plaintiff was being escorted out of the courtroom by employees of the Sheriff's Department.   The FAC named five defendants, Jason Mehaffey, John Cooper, Nate Tamminga, Rebecca Casarez, and Dave Royce, and alleged four counts against them: deliberate indifference; cruel and unusual punishment; negligence; and assault and battery.

1

On July 13, 2022, the Court entered a case management order (CMO) which provided a discovery deadline of November 14, 2022, and a dispositive motion deadline of December 12, 2022.  *See* CMO (ECF No. 16).

On November 2, 2022, the Court entered a stipulated order which amended the CMO to extend the discovery deadline to January 13, 2023, and to extend the dispositive motion deadline to February 10, 2023.  *See* Order (ECF No. 54).

On December 6, 2022, plaintiff filed his second amended complaint (SAC) (entitled "Verified Complaint for Damages") (ECF No. 75).   The SAC involved the same incidents in July 2021, but dropped defendant Royce and the negligence claim.

The SAC set out the following allegations.   On July, 8, 2021, while in the custody of the MDOC, plaintiff was transported to the Kent County Correctional Facility (KCCF).   SAC at PageID.395.   On July 9, 2021, plaintiff was transported to the 17th Circuit Court for a re-sentencing for crimes involving sexual acts with children.   *Id*. at PageID.393, 395; Sent. Trans. (ECF No. 82-3, PageID.492).   At the conclusion of the proceedings, defendants Tamminga and Casarez escorted plaintiff to the inmate exit.   SAC at PageID.395. At that time, plaintiff was handcuffed with belly chains and leg irons.   *Id*.   Prior to exiting, plaintiff stopped walking and said "Goodbye" and "I love you" to his mother.   *Id*. at PageID.396.   Defendant Tamminga "jerked" plaintiff into the vestibule where: plaintiff stumbled; the ankle cuffs caused him severe pain; he hit a chair; he fell to the floor; and he experienced pain in his head, neck spinal cord, right hip, and chest.   *Id*.   Defendants Tamminga and Casarez laughed and ordered plaintiff to get off of the floor.   *Id*.   Plaintiff told them that there was something wrong with his neck and back, that he thought his hip was broken, asked for medical attention, and apologized for his inability to

comply with their orders to get up.    *Id*. at PageID.396-397.

Defendants Tamminga and Casarez denied plaintiff's requests for medical care and accused him of faking an injury.    *Id*. at PageID.397.    Plaintiff said he had pre-existing injuries, was genuinely injured, and needed help.    *Id*. Tamminga radioed for assistance.    *Id*. A short time later, defendants Mehaffey and Cooper arrived at the scene.    *Id*.    Plaintiff told Mehaffey and Cooper what happened and that he needed medical care.    *Id*.    Defendants Mehaffey and Cooper lifted plaintiff off of the floor and dragged him to the elevator causing him pain.    *Id*.    Cooper pressed his hand onto plaintiff's nose while Mehaffey squeezed plaintiff's neck and throat.    *Id*. at PageID.398.    Plaintiff's airway was repeatedly blocked and he choked throughout the duration of the escort, screaming "I can't breathe," "you're choking me," and "help".    *Id*. at PageID.62. Mehaffey ridiculed plaintiff for his "alleged sexual interests in children", mimicked plaintiff, and referred to plaintiff as "George Floyd."    *Id*.    Cooper, Tamminga, and Casarez laughed.    *Id*. Plaintiff made a final scream for help at the elevator, yelling a judge's name near a courtroom, at which time Mehaffey placed him in a chokehold which completely blocked his airway.    *Id*. at PageID.399.    Moments later, plaintiff lost and then regained consciousness.    *Id*. Cooper, Tamminga and Casarez did not intervene to prevent Mehaffey from choking plaintiff.    *Id*.

Upon entering the parking garage, plaintiff told Cooper and "unknown person(s) nearby" that "I'm reporting this" to which Cooper allegedly replied, "Do it and I'll beat you to a bloody pulp, f*****g pedophile!"    *Id*. at PageID.399-400.    While plaintiff was considering how to enter the transport van, an unknown person forced him into the van where he fell headfirst and struck his face on the steel floor.    *Id*. at PageID.400.    Someone yelled "Cameras, cameras!" and ordered "Get his [sic] off his belly".    *Id*.    Plaintiff asked for medical attention at KCCF and was

told that officials were informed. *Id.* at PageID.400-401.   Plaintiff was transported back to the MDOC on July 16, 2021. *Id.* at PageID.401.

In Count 1, plaintiff alleged that defendants Mehaffey, Cooper, Tamminga, and Casarez were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *Id.* at PageID.402-403.   In Count 2 plaintiff alleged that the four defendants engaged in cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at PageID.403. In Count 3, plaintiff alleged that the four defendants committed assault and battery in violation of Michigan law. *Id.* at PageID.403-404.   Plaintiff seeks compensatory and punitive damages. *Id.* at PageID.404-405.

## II.     Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.    Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).    As discussed, plaintiff filed a verified SAC. This pleading has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment.  *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).    However, the Court is not bound to blindly adopt a non-moving party's version of the facts.    "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    Exhaustion

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).   A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See*

*Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.   One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.   This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).   In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.   *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"   *Jones*, 549 U.S. at 218.

The "Inmate Grievance Procedures" are set forth in the Kent County Sheriff's Office Policy & Procedure Manual ("Manual") (ECF No. 82-19, PageID.584-585)).   Pursuant to these procedures, inmates are required to: (1) try to resolve their issue informally with the staff before filing a grievance (Manual at ¶ 12.7.2.A.2); (2) write a KITE requesting to speak with a sergeant (*id*. at ¶ 12.7.A.3); (3) request a grievance form from the sergeant if they feel the issue has not been resolved and submit the written grievance within five days (*id*. at ¶¶ 12.7.2.A.2-3); (4) after the form is submitted via the method outlined in the Policy Manual, the Lieutenant has ten days to provide a response answering the inmate's grievance (*id*. at ¶¶ 12.7.2.A.6-10); (5) if the inmate believes the response of the lieutenant is not satisfactory, they are entitled to one level of appeal, which will be forwarded to the Jail Administrator (*id*. at ¶ 12.7.2.A.11).

Defendants point out that plaintiff did not submit a KITE to speak with a sergeant or a grievance form for the incident that occurred on July 9, 2021, that the deadline for filing a grievance was July 14, 2021, and that plaintiff was transferred from KCCF back to the MDOC on

July 16, 2021.  *See* Defendants' Brief at PageID.447 and fn 4.  *See* Declaration of Lyndsie Cole, Chief Deputy of the Kent County Sheriff Department (confirming that there is no record of plaintiff filing a grievance regarding the July 9th incident) (ECF No. 82-20, 587-588).

Here, plaintiff contends that he was excused from exhausting his administrative remedies because KCCF personnel would not provide him with a grievance form.  Plaintiff's Response (ECF No. 102, PageID.733-736).  *See Ross v. Blake*, 578 U.S. 632, 644 (2016) (explaining that exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" which "renders the administrative process unavailable.").  Plaintiff sets out various reasons to support his claim of excusal from exhaustion.

Plaintiff referred to his Victim/Witness Statement for reporting an "assault/sexual" (ECF No. 102-14, PageID.867-868).  In the statement, plaintiff included an asterisked statement that "[t]his form shall not be intended to replace the grievance process" and another statement that, "I am requesting a grievance form pursuant to 42 U.S.C. 1997, that I may properly exhaust my available remedies."  *Id*. at PageID.867-868.  Defendants point out that plaintiff cannot request a grievance as part of a Victim/Witness statement, because the inmate grievance procedure states that "[t]he sergeant is the only person who can issue the inmate a grievance form."  Defendants' Reply (ECF No. 117, PageID.1016).  Based on this record, plaintiff's submission of a Victim/Witness statement is not a request for a grievance form under the Inmate Grievance Procedures.

Next, plaintiff stated that he requested grievance forms from "Shane Cole, Bryan Clark, Gary Herzhaft, Rodney Bozman, and Richard Weber. (*See*, generally, Movement

Sheet/Incident, Ex L).ˮ *See* Plaintiff's Response at PageID.734.   Contrary to plaintiff's claim,

Exhibit L does not refer to filing a grievance.   Rather, the form mentioned that plaintiff "was out

in the L1 dayroom filling out a victim witness statement about a PREA [Prison Rape Elimination

Act] incident that he alleged took place at the court house while he was there today."   Inmate

Incident (ECF No. 102-13, PageID.865).

Next, plaintiff stated that he requested a grievance form from a jail employee.

Plaintiff's Response at PageID.735.   Plaintiff is referring to a note created on July 14, 2021which

stated as follows:

> Seen on camera cell rounds - rec cont S2.   Johnson spoke to staff calmly
> from his position sitting on his bunk.   He claims that he was assaulted when
> returning from court and would like to file a grievance. This was relayed to Sgt
> Kolk and Sgt Boelens.   He then voiced frustrations with not retuning to prison.
> He claims that if he has not left by lunchtime tomorrow "it's gonna get real bad real
> fast."   He reported that he is stop eating/drinking, exercise "24/7", and refuse all
> medical care.   This was relayed to Sgt Kolk and Sgt Boelens as well.   Will
> continue to monitor. aot066

Housing Entry (ECF No. 102-19, PageID.920).   This KCCF record supports plaintiff's claim that

he requested a grievance form from KCCF personnel before the grievance filing deadline (July 14,

2021) and that the request "was relayed to Sgt Kolk and Sgt Boelens."

Next, plaintiff stated that,

> Plaintiff was housed in segregation, deprived a pencil---- presumably due to being
> under suicide observation, and therefore relied solely on verbal requests to obtain a
> grievance form.   Bradley was never provided a grievance form by any KCCF
> official or employee [sic]. He was ultimately transfered [sic] back to prison on July
> 16, 2021. (Decl. of Plaintiff, Exhibit E).

Plaintiff's Response at PageID.735.   Plaintiff did not attach the declaration as (Exhibit E) to his

response.   *See* Exh. E (ECF No. 102-6).   The Court allowed plaintiff to file Exhibit E at a later

date (ECF No. 115-1).   Upon review, Exhibit E does not support plaintiff's contentions that he

was deprived of a pencil, relied on verbal requests to obtain a grievance form, and that "[he] was never provided a grievance form by any KCCF official or employee [sic]."

Next, plaintiff referred to his relatives' attempts to obtain a grievance form:

> Bradley reached out to his mother and stepfather, Richard and Dianna Maat on numerous (recorded phonecall [sic]) occasions, requesting their assistance in obtaining a grievance form, as well as the KCCF Policies and Procedures governing inmate grievances. (Id; Affidavit of Richard Maat, Exhibit S; Affidavit of Dianna Maat, Exhibit T).

Plaintiff's Response at PageID.735.  The declarations of Richard Maat (ECF No. 115-2) and Diana Maat (ECF No. 115-3) state that they made numerous trips to KCCF between July and October 2021, spoke with unnamed KCCF staff, and requested grievance forms for plaintiff as well as "Policy and Procedures governing inmate grievances."  However, there is no indication of when those visits or communications occurred or with whom Mr. and Mrs. Maat spoke.  Based the declarations, those visits and communications occurred sometime after July 16, 2021.  *See* Richard Maat Decl. at PageID.992 ("Bradley explained that his numerous attempts to obtain a grievance form between July 09 and July 16, 2021, from KCCF officials were unsuccessful.").  Even if such attempts were successful, they would have resulted in an untimely grievance filing after plaintiff left KCCF.

Finally, defendants point out that plaintiff's interrogatory answers did not disclose any administrative action taken at KCCF.  Defendants cite Interrogatory Response No. 8, which asked plaintiff to "Identify all lawsuits or administrative proceedings in which you have been involved whether as a plaintiff/claimant or as a defendant/respondent." Plaintiff's Interrogatory Response (ECF No. 82-18, PageID.578).  In his response, plaintiff did not identify any "administrative proceedings."  *Id*.

9

Based on this record, a genuine issue of material fact exists as to whether plaintiff was excused from exhaustion because KCCF personnel did not provide him with a grievance form. Specifically, KCCF records support plaintiff's claim that he requested a grievance form on July 14, 2021.  Plaintiff's lack of records from an administrative grievance proceeding is consistent with his claim that KCCF personnel did not provide him with a grievance form to file. Accordingly, defendants' motion for summary judgment for lack of exhaustion should be denied.

### IV.    Plaintiff's admissions

Defendants contend that plaintiff admitted that they are not liable, because he failed to respond to the request to admit from defendant Casarez.  *See* Defendants' Brief (ECF No. 82, PageID.434).  Defendants' contention is moot, because the Court has allowed plaintiff to withdraw his admissions.  *See* Order (ECF No. 122, PageID.1043-1048).

### V.    Eighth Amendment claims

### A.    Deliberate Indifference (Count 1)

Johnson seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."  *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff claims that defendants violated his rights under the Eighth Amendment when they escorted him through the Kent County Courthouse and failed to provide

10

him with medical care.  It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  A viable Eighth Amendment claim consists of an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id*. at 8-9.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9. The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Mere negligence does not constitute an Eighth Amendment violation.  *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently

culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

In determining whether defendants were deliberately indifferent to plaintiff's serious medical needs, the Court views each defendants' action as that of a layperson, not as the action of a doctor or a nurse.  "[B]ecause police officers and prison guards are laypersons, not physicians, we must determine if a layperson would easily recognize the necessity for a doctor's attention under the circumstances presented."  *Estate of Harbin v. City of Detroit*, 147 Fed. Appx. 566, 571 (6th Cir. 2005) (internal quotation marks, citations and brackets omitted).  "As *Farmer* makes clear, the officers must not only be aware of the facts from which they could draw the inference that [a prisoner] had a serious medical need, they also must draw that inference." *Id.*, citing *Farmer*, 511 U.S. at 837.

Here, defendants seek summary judgment based on the affirmative defense of qualified immunity.  Under this defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."  *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The existence of the qualified immunity inquiry involves two questions: whether the defendant violated a constitutional right and whether that right was clearly established.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages."  *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016).  "On summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party asserting the injury and drawing all reasonable inferences in that party's favor."  *Id*.  When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity."  *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

Plaintiff's SAC alleged that he fell while leaving the courtroom, that he suffered injuries, and that defendants were deliberately indifferent to his serious medical needs by failing to address these injuries.  SAC at PageID.402-403.[1]  Viewing the evidence in the light most favorable to plaintiff, a layperson would not perceive that plaintiff suffered serious injuries which required immediate medical attention.   Plaintiff admitted that there was no visible sign of injury after he flipped [sic] over a chair.  Johnson Dep. (ECF No. 82-2, PageID.466-467).   Plaintiff testified that he told the officers "I'm hurt", "I'm injured", and "I need medical attention."   *Id*. at

---

[1] Defendants submitted a "Statement regarding joint statement of material facts regarding defendants' motion for summary judgment" (ECF No. 85) advising the Court that there was no joint statement to file with their motion for summary judgment.  Then, the parties proceeded to file "supplements" in which plaintiff underlined undisputed portions of defendants' brief (ECF No. 99), plaintiff filed a "Statement regarding joint statement of material facts regarding plaintiff's brief in opposition to defendants' motion for summary judgment" (ECF No. 106), and defendants set out portions of plaintiff's response brief which were undisputed (ECF No. 107). To say the least, these papers are not a model of clarity. Then, to further complicate matters, plaintiff filed his own "Statement of disputed factual issues" (ECF No. 109) and a "Supplement to plaintiff's statement of disputed factual issues" (ECF No. 116).   In short, there is no "joint statement" of disputed or undisputed facts.   Because the Court cannot rely on this collection of supplements and statements, it will disregard the matters set forth in ECF Nos. 85, 99, 106, 107, 109 and 116.

PageID.467.   The two escorting officers, defendants Tamminga and Casarez, did not believe that plaintiff was injured.  *Id*. at PageID.468.   Defendants Mehaffey and Cooper did not see plaintiff fall, but arrived later.   *Id*. at PageID.464, 468-469.   The video evidence does not reflect that plaintiff suffered any obvious injuries.   On the contrary, the video evidence reflects that plaintiff was resisting defendants as they transported him through the courthouse to the van.   *See* Video Evidence (Exhs. F, H, I, J, K, L and M) (ECF No. 125).

In addition to these alleged injuries, plaintiff testified at his deposition that he lost consciousness when defendant Mehaffey used a chokehold.   Johnson Dep. (ECF No. 82-2, PageID.474).   Defendants' expert Stanley J. Sczecienski, D.O. summarized the relevant video evidence as follows:

> FL10 CD lockup.   This video is 1 minute and 37 seconds in length. It shows one sheriff opening a door, another sheriff removing a chair from the pathway. The individual is brought through the doorway by two other male sheriffs of which one does have his arm around the upper chest/neck area. The female sheriff closes the door behind them, and the gentleman is placed into a room.   His feet can be seen on the floor, and he is resisting and fighting. Cuffs can be seen across the chest, long chain like. This may not be a room but may be an elevator that they are entering into. He is lifted by the upper arms by the two sheriffs and put into the elevator. The three other sheriffs follow, five sheriffs in total.

Dr. Sczecienski Report (ECF No. 82-8, PageID.536).   While it is not entirely clear from the video, viewing this evidence in the light most favorable to plaintiff, the video might be construed as showing what a layman would refer to as a "chokehold" for a few seconds while defendants transported him through a doorway to the elevator.   For purposes of this motion, assuming that plaintiff was placed in a chokehold during that time, there is no indication that he was unconscious. On the contrary, plaintiff is looking at the camera and talking while being held by the elevator. *See* Video (Exh. H).

14

Even if plaintiff had suffered non-obvious injuries from the fall or alleged chokehold, he has failed to establish the objective element of a deliberate indifference claim. "[W]here the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).   Here, plaintiff has not placed such medical evidence in the record.

When he returned to the KCCF later that day (July 9th), plaintiff walked to his cell. Johnson Dep. at PageID.482.   Once there, plaintiff testified: that he saw a nurse; that he told a nurse about his injuries and that he needed medical assistance; that he was evaluated with an EKG for chest pains; that he was not evaluated for his other alleged injuries; and that "I may have had some headaches".   *Id*. at PageID.100, 474, 483-484.   Some time later in the day, plaintiff reported to a nurse that he was chewing on a toothpaste cap and swallowed it.   *Id*. at PageID.471-472.

KCCF employee S. Cole entered two notes related to plaintiff.   A note from 1:54 p.m. (13:54) refers to plaintiff's interaction with a nurse:

> Johnson is complaining about various medical issues.   A set of vitals were taken and determined to be normal.   The nurse then contacted the medical unit because he began to complain about chest pains and difficulty breathing. . . For now he is in the dayroom watching TV.

Note (ECF No. 102-8, PageID.818).   Another note from 3:16 p.m. (15:16) stated, "I contacted medical and spoke with RN Mary about his medical claims and issues as well." Note (ECF No. 102-8, PageID.820).

Later that afternoon, KCCF records state that plaintiff had a "Foreign Body Ingestion/Food Impaction" emergency at 4:30 p.m.   KCCF Records (ECF No. 102-15,

PageID.883).   Plaintiff had another "Foreign Body Ingestion/Food Impaction" emergency the next day (July 10th) at 12:14 p.m.  *Id*. at PageID.885.   At that time, plaintiff alleged that he swallowed two packets of heroin.  *Id*. at PageID.886.   Plaintiff was sent to the emergency room.  *Id*. at PageID.887.

Upon his arrival, Michelle Snow, PA-C saw plaintiff who allegedly swallowed "a toothpaste cap, and then two grams of heroin, and then a [sic] unknown amount of pills."   Snow Dep. (ECF No. 82-16, PageID.558-559, 562).   At her deposition, PA-C Snow reviewed the SAC and testified regarding plaintiff's alleged injuries as follows:

> Q.    When you saw Mr. Johnson, did he have the injuries he is alleging in these paragraphs?
>
> A.    What he basically had told us is he was having severe neck pain.   When I examined him it was -- I believe it was the right side, but it was in the front anterior lateral aspect of his neck (indicating).   I do not recall seeing any bruises or any kind of obvious deformity at that point.   His main concern was his belly pain.

*Id.* at PageID.560.

PA-C Snow testified that since the alleged injuries occurred on July 9th, the examination "should have shown something then probably [sic] if he was seen on the 10th."   *Id*. at PageID.562.   PA-C Snow further testified that plaintiff did not have physical signs of having been choked until he was unconscious:

> Q.    And so if Mr. Johnson had been choked unconscious, you would expect there would have been some physical sign when you observed him the next day?
>
> A.    Yeah.   There should have been something.
>
> Q.    You mentioned that you seen [sic] someone else with injuries related to being choked unconscious.   Did they have any other signs as well, like other than redness on their neck or bruises on their neck?

A.      Just kind of general, without breaking HIPAA, they had multiple like old healed injuries and stuff like that, and we were able to get them help thankfully, but, yeah, we are able to see stuff unfortunately and the story did not usually match up of the mechanism.

Q.      And Mr. Johnson did not have those signs at all?

A.      He did not.

*Id*. at PageID.562-563.

Plaintiff returned from the offsite hospital on July 11, 2021 at 2:26 p.m. KCCF Records at PageID.887.   At 11:06 p.m. plaintiff presented for a medical sick call with Lindsay Lucas, R.N. *Id*. at PageID.870; Lucas Dep. (ECF 82-15). Plaintiff stated that "Officers assaulted him in Court House on Friday."   KCCF Records at PageID.870.   At her deposition, RN Lucas explained her objective observations of plaintiff:

S/S is no signs or symptoms of distress.   PT is patient, patient breathing easily, evenly.   Vital signs stable, that's what VSS means.   PERRL, again, is that pupils are equal, round, reactive to light.   EOM is extraocular movements.   EOM intact means that his eyes are moving and tracking the way they should be.   Denies dysphagia, means he can swallow fine.   Denies incontinence, means he hasn't lost bowel or bladder control.   Denies saddle paresthesias again.   CAP refill is capillary refill, and less than three seconds is normal.   So capillary refill is normal on his hands.   Alert and oriented times three; again, he knows who he is, where he is, what time it is.   Walks easily, moves arms and legs freely with full range of motion; that's true.   Trachea midline, again, because he was saying he was dragged and carried by his neck, his trachea appeared midline to me.   No visible ecchymosis, which is bruising, scrapes, bumps or redness on the anterior neck, which is the front of your neck, where he was allegedly carried.

Lucas Dep. (ECF 82-15, PageID.553-554).   When asked, "Did Mr. Johnson have any discernable injury at all?", RN Lucas responded "No."   *Id*. at PageID.555.

Finally, plaintiff did not identify any injuries in his interrogatory responses other than an alleged loss of consciousness.   When asked to identify "the injury that occured [sic] as a result of the alleged conduct in the Amended Complaint", plaintiff responded, "Insofar as medical

17

diagnostics; Injury unknown at this time."   Plaintiff's Interrogatory Response (ECF No. 82-18, PageID.576-577) (Oct. 21, 2022).   When asked to identify "which particular Defendant(s) caused each discernable injury", plaintiff responded "Defendant Mehaffey caused Plaintiff to lose consciousness. With repect [sic] to any other discernable injury; unknown at this time."  *Id*. Finally, when asked to identify "in full, with particularity, the actions of each individual Defendant that caused any injuries allegedly suffered during the events described in the Amended Complaint", plaintiff again identified only one defendant, "Defendant Mehaffey engaged in a rear chokehold-like maneuver against Plaintiff, causing Plaintiff's loss of consciousness. With respect to man any other discernable injury; unknown at this time."  *Id*. at PageID.577.

In summary, there is no evidence that plaintiff suffered an obvious injury and a serious medical need while at the courthouse on July 9, 2021.   The video evidence blatantly contradicts plaintiff's contention that he lost consciousness[2] and plaintiff has failed to present any verifying medical evidence of any of his alleged injuries.   On the contrary, the medical record demonstrates that plaintiff had no injury when he returned to KCCF.   While plaintiff was sent to the emergency room on July 10th, this had nothing to do with his alleged injuries at the courthouse. Rather, this was due to plaintiff's behavior at the KCCF when he allegedly swallowed a toothpaste cap, heroin and pills.   Plaintiff has not presented sufficient evidence on which the jury could reasonably find that defendants were deliberately indifferent to his serious medical needs at the courthouse.  *See Copeland*, 57 F.3d at 478-79.   Stated another way, there is no evidence that defendants would easily recognize the necessity for a doctor's attention.  *See Estate of Harbin*, 147 Fed. Appx. at 571.   Defendants are entitled to qualified immunity because plaintiff has failed

---

[2]  *See Scott*, 550 U.S. at 380.

to establish the violation of a constitutional right.  *See Pearson*, 555 U.S. at 232.   Accordingly, defendants should be granted summary judgment as to the Eighth Amendment deliberate indifference claim alleged in Count 1.

### B.      Excessive Force (Count 2)

Plaintiff alleged that defendants used excessive force in violation of the Eighth Amendment when they escorted him out of the courtroom. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id*.

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied.  *Hudson*, 503 U.S. at 6-7.  *See also Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010) (applying *Whitley*).   Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37.    In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at

321).   Defendants assert a qualified immunity defense to plaintiff's excessive force claim alleged in Count 2.

### 1.    Defendants Tamminga and Casarez

Plaintiff has presented no evidence to support an excessive force claim against defendants Tamminga or Casarez.   As discussed below, plaintiff identified defendants Mehaffey and Cooper as working together to place him in a chokehold, and that an unknown individual pushed him into the van.   *See* Johnson Dep. at PageID.477-481.   Accordingly, defendants Tamminga and Casarez should be granted summary judgment on plaintiff's Eighth Amendment excessive force claim alleged in Count 2.

### 2.    Defendants Mahaffey and Cooper and the chokehold

At his deposition, plaintiff testified that the alleged use of excessive force involved a chokehold and the "collective actions" of defendants Mehaffey and Cooper:

> I just know that between Mehaffey and Cooper, I can't identify which hands were wear [sic] when, what hand was choking me, what hand -- I believe it was Cooper that went up under my nose, and I think it was him that kept digging up under my jaw.   But just the collective actions of Mehaffey and Cooper, it seems like their area of focus was my neck and my jaw.   And from Mehaffey, even though I didn't allege that he drug me, his entire use of the choke hold is excessive, and the loss of consciousness is -- yeah.

Johnson Dep. at PageID.480.

In this regard, defendants' expert, Peter R. Jaskulski, reviewed the use of force against plaintiff.   Mr. Jaskulski noted that "[o]ne of the main duties of officers that are assigned to court security is to supervise prisoners and control their behavior while they are in the custody of the officers."   Jaskulski Report (ECF No. 82-6, PageID.520).   Here, Jaskulski identified defendant Mehaffey as using a pressure point technique on plaintiff:

20

Once the elevator door opened, Deputy Mehaffey reported that he applied a "hypoglossal nerve" pressure point to Mr. Johnson to get him to comply. This was evident on the video. You can see Deputy Mehaffey place his fingers under the jawbone of Mr. Johnson. This is where the hypoglossal nerve is located. Mr. Johnson still would not comply. According to the reports of Deputies Casarez, Cooper and Mehaffey, Mr. Johnson was placed on his knees while inside of the elevator.

*Id*. at PageID.518-519.

As discussed, *supra*, the evidence does not support plaintiff's claim that he was choked until he was unconscious.   However, the Court concludes that a genuine issue of material fact exists as to whether defendants Mahaffey and Cooper applied force to plaintiff's neck and jaw in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  *See Hudson*, 503 U.S. at 6-7.   This factual question regarding the use of force precludes granting defendants Mahaffey and Cooper summary judgment on their qualified immunity defense.   Accordingly, defendants Mahaffey and Cooper's motion for summary judgment should be denied as to the excessive force claim related to the chokehold.

### 3.    The van

Finally, plaintiff alleged that an unknown person forced him into the van where he fell headfirst and struck his face on the steel floor.   SAC at PageID.400.   In his deposition, plaintiff referred to the van incident as involving excessive force:

Q.    And so other than Mehaffey and Cooper's lifting, dragging, choke holding, those events, is there anything else you are alleging was excessive use of force?

A.    When I was pushed into the van.

Q.    Pushed into the van.

A.    Yep.

Q.      Okay.  And that's it.  I just want to make sure we have the full scope of what you're alleging on record.

A.      Well, and the -- and the -- and the just generalized, even when they weren't grabbing my throat, just moving my body.  That's excessive in and of itself because no force was necessary.

Q.      And that was Mehaffey and Cooper?

A.      Yes.

Johnson Dep. at PageID.481.  However, plaintiff could not identify the officer that pushed him into the van.  *Id*. at PageID.477.  Plaintiff also testified that his knowledge of the incident was gleaned from the incident report (*e.g.*, "I know by reading the incident report that [defendant] Mehaffey helped me up.").  *Id*.  In short, plaintiff cannot identify the person who allegedly pushed him into the van.  Accordingly, defendants Mehaffey and Cooper are entitled to summary judgment with respect to this claim.

### C.      Assault and Battery (Count 3)

In Count 3, plaintiff alleged that defendants' actions constituted assault and battery under Michigan law.  Plaintiff does not set forth any evidence to support a claim for assault and battery against defendants Tamminga and Casarez.  As discussed, *supra*, plaintiff's claims arise from the alleged actions of defendants Mehaffey and Cooper.  Accordingly, defendants Tamminga and Casarez's motion for summary judgment should be granted as to the state law claims of assault and battery alleged in Count 3.

This leaves defendants Mehaffey and Cooper, who contend that they are entitled to summary judgment on these claims.  Defendants do not address how the evidence supports or fails to support the elements of assault and battery.  In addition, while defendants recite a legal standard for governmental immunity under Michigan law and conclusory statements that they are

22

entitled to such immunity, they have not developed this defense in a meaningful manner.   *Id*. at PageID.445-446.   "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones."   *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).   Finally, defendants stated that, "Because Defendants did not use excessive force, Defendants did not commit an assault or battery."   Defendants' Brief at PageID.445.   Assuming for purposes of this motion that defendants' statement is accurate, a genuine issue of material fact exists as to whether defendants Mehaffey and Cooper used excessive force.   For all of these reasons, defendants Mehaffey and Cooper's motion for summary judgment should be denied as to the state law claims of assault and battery alleged in Count 3.

## VI.    Recommendation

Accordingly, I respectfully recommend that defendants' motion for summary judgment (ECF No. 81) be **DENIED** as to the issue of exhaustion.

With respect to plaintiff's Count 1 (Eighth Amendment claim for deliberate indifference to a serious medical need), I recommend that the motion be **GRANTED** as to all defendants.

With respect to plaintiff's Count 2 (Eighth Amendment claim for excessive force), I recommend that the motion be **GRANTED** as to defendants Tamminga and Casarez, **GRANTED** to the extent that plaintiff alleged that defendants pushed him into the van, and **DENIED** as to plaintiff's allegation that defendants Mehaffey and Cooper used excessive force by placing him in a chokehold.

With respect to plaintiff's Count 3 (Michigan state law claim for assault and battery), I recommend that the motion be **GRANTED** as to defendants Tamminga and Casarez, and **DENIED** as to defendants Mehaffey and Cooper.

I further recommend that defendants Tamminga and Casarez be **DISMISSED** from this action.

Dated:  August 28, 2023                      /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).